IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EARLENE MOSES-FARRARE** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO.  24-540 |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.* | : | |

**MEMORANDUM**

**MURPHY, J.**                                                                                                         **July 24, 2024**

Police officers entered Earlene Moses-Farrare's home in search of her nephew, John Crumbs.  But the bench warrant for Mr. Crumbs was wrong.  Before the search, she had told Mr. Crumbs's parole officer — defendant Kareem Tookes — that Mr. Crumbs did not and had never lived at her address.  And during that conversation with Mr. Tookes, Ms. Moses-Farrare gave him what she believed was Mr. Crumbs's current address.  Ms. Moses-Farrare later told the officers who entered her home the same thing.  But they conducted the search anyway, holding her at gunpoint and addressing her in an abusive, aggressive manner.  According to Ms. Moses-Farrare, this incident was the product of a conspiracy among the officers to violate her civil rights and the City of Philadelphia's problematic warrant-issuing practices.

Ms. Moses-Farrare brings claims for excessive force, illegal entry, illegal search, conspiracy, and failure to intervene, as well as a *Monell* claim against the City of Philadelphia.  Defendants move to dismiss the conspiracy and *Monell* claims under Rule 12(b)(6), arguing that Ms. Moses-Farrare failed to adequately state her claim.  Defendants articulate the makings of a perfectly reasonable defense against the allegations.  But taking Ms. Moses-Farrare's alleged facts as true, as we must, she has sufficiently stated a claim for relief on both the conspiracy and *Monell* claims.  We therefore deny defendants' motion to dismiss.

1

I. **Background**

Earlene Moses-Farrare brings this action against defendants for allegedly "forcibly entering [her] home to arrest an individual who was never there, holding her at gunpoint, and damaging her property, as well as the [c]ity's failure to enforce a policy or training that would have prevented these violations." DI 13 ¶ 1. Allegedly, on February 18, 2022, defendants entered Ms. Moses-Farrare's home with a warrant for John Crumbs, plaintiff's nephew. DI 21 at 2; Transcript of Oral Argument, DI 26 at 23:1-4.[1] While unclear from the pleadings, we learned at oral argument that this case involves a bench warrant. DI 26 at 4:15-18. Ms. Moses-Farrare alleges that the warrant had been erroneously issued with her home address listed, despite that Mr. Crumbs was not there and had never resided there. DI 26 at 18:10-12; DI 13 ¶ 25.

Ms. Moses-Farrare asserts that she had informed Mr. Crumbs's parole officer — defendant Kareem Tookes — that Mr. Crumbs did not live in her home and provided what she believed to be his place of residence. *Id.* ¶ 28. Ms. Moses-Farrare also asserts that she repeated this to defendants while they searched her home and held her at gunpoint. *Id.* ¶¶ 23, 25. Nevertheless, the officers allegedly entered her home and searched for Mr. Crumbs. *Id.* ¶¶ 20, 23, 25.

Ms. Moses-Farrare brings this lawsuit under 42 U.S.C. § 1983 alleging violations of her Fourth and Fourteenth Amendment rights "to be free from excessive force, illegal entry into her home, illegal search of her home, as well as conspiracy to commit and failure to intervene in the above violations of rights." DI 17 at 1. She also brings a *Monell* claim alleging that the above

---

[1] Plaintiff's complaint states that the events took place on February 17, 2022. DI 13 ¶ 18. In the Rule 26(f) report, the parties stipulated to the incident occurring on February 18, 2022. DI 21 at 2. At oral argument, the parties confirmed that the incident happened on February 18, 2022. Transcript of Oral Argument, DI 26 at 23:1-4.

2

violations were "the result of unconstitutional policy, practice, and/or custom and failure to properly supervise and train." *Id.*

Defendants seek dismissal of the conspiracy and *Monell* claims. DI 16 at 1. Defendants argue that the officers are not liable for conspiracy because their common goal was simply to execute a bench warrant issued for Mr. Crumbs and because Ms. Moses-Farrare pled only conclusory allegations. DI 26 at 6:19-22; DI 16 at 4.[2] Regarding the *Monell* claim, defendants argue that plaintiff failed to identify a city policy or custom that was a moving force behind the alleged constitutional violations, failed to assert facts showing conduct by a municipal policymaker creating or supporting the alleged policy or custom, and failed to provide facts to show deliberate indifference to constitutional violations caused by an alleged failure to train and supervise. DI 16 at 5-6, 9.

## II. Analysis

We address defendants' arguments on the conspiracy and *Monell* claims separately. When considering a Rule 12(b)(6) motion to dismiss, we accept plaintiff's factual allegations as true, viewing the facts in the light most favorable to the plaintiff. *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021). However, merely conclusory allegations are not entitled to the same presumption of truth. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). Therefore, "a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

---

[2] Defendants' argument about the officers' common goal was made for the first time at oral argument, perhaps because the pleadings left the impression that there was no warrant at all, but the parties clarified that there was a bench warrant.

555-56 (2007)).  A "claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Klotz*, 991 F.3d at 462 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Plaintiff has alleged sufficient facts to allow reasonable inferences of liability regarding both the conspiracy and *Monell* claims, and we therefore deny defendants' motion to dismiss.

### A. The conspiracy claim is adequately pled.

To establish a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must show that, acting under color of state law, at least two individuals "reached an understanding" to deprive plaintiff of her constitutional rights.  *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)).  When pleading an unconstitutional conspiracy, a plaintiff must "assert facts from which a conspiratorial agreement can be inferred."  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).  In the absence of direct proof, it is sufficient for a plaintiff to allege circumstantial evidence, such as the period of the conspiracy, the object of the conspiracy, and the overt acts taken to achieve the conspiratorial purpose.  *Jutrowski*, 904 F.3d at 295.

Ms. Moses-Farrare alleges that defendants "entered into an agreement and/or reached a meeting of their minds to violate [p]laintiff's constitutional rights to be free from illegal entry into her home, from the illegal search of her home, and from the use of excessive force against her person."  DI 13 ¶ 54.  Defendants move to dismiss this claim, characterizing Ms. Moses-Farrare's statements as conclusory and lacking substantive factual allegations.  DI 16 at 4.  At oral argument, defense counsel represented that defendants' object was simply to execute the bench warrant.  DI 26 at 6:19-22.

4

We may accept *arguendo* that executing the bench warrant was one of defendants' goals and still conclude that Ms. Moses-Farrare alleged an unconstitutional conspiracy. Notably, Ms. Moses-Farrare allegedly told defendants that Mr. Crumbs did not and had not ever lived in her home. DI 13 ¶ 25. And before the incident, she had told Mr. Tookes that Mr. Crumbs did not live in her home and gave Mr. Tookes what she believed was Mr. Crumbs's current address. *Id.* ¶ 28. Additionally, Ms. Moses-Farrare alleges that one defendant "held her at gunpoint, pointed a gun at her face, and using unnecessarily aggressive and threatening language, demanded that she come downstairs and sit down," *id.* ¶ 22, and then other defendants took over for the first officer and continued to hold her at gunpoint while they searched her home, *id.* ¶ 23. Defendants allegedly conducted themselves in an "orchestrated fashion" and followed "preplanned, assigned tasks." *Id.* ¶ 54.

Taking Ms. Moses-Farrare's allegations as true, she has pled sufficient facts at the motion to dismiss stage to establish a conspiracy to deprive her of her constitutional rights. Under *Great W. Mining & Mineral Co.*, we may infer a conspiratorial agreement when a plaintiff provides plausible grounds to support her claim. 615 F.3d at 178. Here, Ms. Moses-Farrare plausibly alleged that defendants knowingly entered her home with an inaccurate warrant and no reason to believe that Mr. Crumbs was present. DI 13 ¶ 50. Additionally, she identified the following: (1) the individuals who entered into the conspiracy (i.e., the officers);[3] (2) the period of the conspiracy (i.e., February 18, 2022);[4] (3) the object of the conspiracy (i.e., to deprive plaintiff of her constitutional rights);[5] and (4) the acts taken in furtherance of the conspiracy (e.g., officers substituting in for one another to hold plaintiff at gunpoint and searching the home in a pre-planned

---

[3] DI 13 ¶ 54.
[4] DI 21 at 2; DI 26 at 23:1-4.
[5] DI 13 ¶ 54.

manner).[6] Under *Jutrowski*, this is enough. *Jutrowski* instructs that an agreement may be inferred from circumstantial evidence, such as when the plaintiff has pled the parties to the conspiracy, the time period of the conspiracy, and the object of the conspiracy. 904 F.3d at 295. Ms. Moses-Farrare has done so. Therefore, defendants' motion to dismiss the conspiracy claim is denied.

### B. The *Monell* claim is adequately pled.

Although there is no respondeat superior liability under § 1983, there are two paths through which a municipality or government may be sued in relation to actions taken by their employees. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996). The first route is establishing that the unconstitutional act "implements or executes a policy, regulation or decision officially adopted by [a] governing body or informally adopted by custom." *Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). The second route is often referred to as failure to train, and requires a showing that plaintiff's injuries were caused by a failure or inadequacy on the part of the municipality that "reflects a 'deliberate' or 'conscious' choice" amounting to deliberate indifference. *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (internal quotations omitted).

Under the policy and custom route for a *Monell* claim, a policy is made when a decisionmaker with final authority issues an official proclamation, policy, or edict. *Id.* A course of conduct becomes a custom when, although not law, the practice is "so well-settled and permanent as to virtually constitute law." *Id.* at 106. Once the policy or custom has been identified, a plaintiff must show a "plausible nexus" or "affirmative link" between the policy or custom and plaintiff's specific injury. *Bielevicz v. Dubinon*, 915 F.2d 845, 850-51 (3d Cir. 1990).

---

[6] *Id.* ¶¶ 22-23, 54.

Under the failure to train route for a *Monell* claim, a plaintiff may allege deliberate indifference by showing "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999).

Acts related to the issuance and execution of an invalid warrant may lead to municipal liability even when the warrant is issued by a court. *Berg v. Cty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000). In *Berg*, the Third Circuit reversed a district court's dismissal of a *Monell* claim on summary judgment, holding that the city could be held liable for acts taken to execute an erroneously issued bench warrant. *Id.* at 277. There, a warrant clerk's typographical error mistakenly generated a warrant for the plaintiff, leading to his arrest and detainment. *Id.* at 267. The Third Circuit held that a *Monell* claim could survive summary judgement because "it is a more than reasonable inference to suppose that a system responsible for issuing 6,000 warrants a year would be the product of a decision maker's action or acquiescence" and a showing of deliberate indifference was established because the city had failed to implement policies to prevent or check for mistakes of this nature. *Id.* at 276.

Following this rule, Judge Yohn in our district allowed a *Monell* claim to survive a motion to dismiss after a probationer was arrested and detained based on a bench warrant erroneously issued after the plaintiff did not appear for a scheduled hearing. *Johnson v. City of Phila.*, No. 13-02963, 2013 U.S. Dist. LEXIS 110954, *2-3 (E.D. Pa. Aug. 7, 2013). The hearing was scheduled on a date when the courts had closed due to a major hurricane, so the plaintiff's failure to appear should not have led to a bench warrant. *Id.* Applying *Berg*, the district court found that the municipality may be liable for failing to "provide safeguards against

the issuance of erroneous warrants, even where the warrant was approved by a Commonwealth court." *Id.* at *10. Notably, the court reasoned that there were a number of issues of fact precluding dismissal, including whether the city's "procedures, or lack thereof, for preventing the issue of erroneous warrants may be challenged." *Id.*

Also following *Berg*, Judge Pratter in our district allowed a *Monell* claim regarding an allegedly "mistakenly issued and executed arrest warrant" to survive a motion to dismiss. *Martinez v. Warner*, No. 07-3213, 2008 U.S. Dist. LEXIS 44395, *11 (E.D. Pa. June 5, 2008). Judge Pratter reasoned "the [c]ourt cannot conclude that [defendants] acted reasonably in relying on the mistakenly issued warrant because the reasonableness of their actions is a factual question linked to the specific facts and circumstances within their knowledge at the time of the arrest." *Id.* at *26. Moreover, "[p]rior to discovery, it would be difficult for [plaintiff] to know how or why the mistake occurred, or what information [defendants] received with respect to the warrant." *Id.* Because of this, the "decidedly sparse" complaint sufficiently stated a claim regarding "whether the [d]epartment had in place proper precautions to safeguard against the execution of mistakenly issued warrants." *Id.* at *37, *40.

We recognize that the Third Circuit reached a seemingly different result in a recent non-precedential opinion. In *Rothermel v. Dauphin Cty. Pa.*, the Third Circuit affirmed a district court's denial of a plaintiff's constitutional injury claim related to the execution of a bench warrant, thereby precluding *Monell* liability. 861 F. App'x 498, 502 (3d Cir. 2021). The plaintiff was arrested because her name and information mostly matched a bench warrant for the arrest of a woman with a similar name. *Id.* at 500. The Third Circuit reasoned that the sheriff's department did not act unreasonably in arresting plaintiff with the bench warrant that contained clerical errors, so the plaintiff had no grounds for a constitutional injury. *Id.* at 502.

8

Distinguishing the case from *Berg* — where a warrant was mistakenly issued naming a party for which no warrant should have existed — the *Rothermel* court reasoned that the plaintiff's arrest was valid because the underlying bench warrant for the intended target was proper. *Berg*, 219 F.3d at 267; *Rothermel*, 861 F. App'x at 501.[7] Because the arrest of the intended target would have been valid in *Rothermel*, the Third Circuit held that the troopers' reasonable mistake of a second party for the target did not invalidate the arrest. 861 F. App'x at 501-02.

At this time, it is not clear how Ms. Moses-Farrare's home address came to be listed on the bench warrant for Mr. Crumbs's arrest. Like in *Berg*, the municipality may be liable — based on what is revealed in discovery — for failing to establish mechanisms to check the accuracy of warrants, even warrants that are issued by Commonwealth courts. 219 F.3d at 276-77. At this early stage, we cannot rule out that scenario. Further, even applying the nonprecedential *Rothermel* test, we still must deny defendants' motion. Unlike in *Rothermel*, where the court believed it was readily apparent that the officers' actions had been rational, 861 F. App'x at 502, it is unclear here whether the officers acted rationally. Ms. Moses-Farrare suggests the opposite, alleging that she told defendants both before and during the search that the target of their search did not live there and had never lived there. DI 13 ¶¶ 25, 28. Because the issue of whether the officers acted rationally is not clear, the *Monell* claim is not amenable to resolution at the motion to dismiss stage.

---

[7] Years prior to plaintiff's arrest in *Rothermel*, a police officer had prepared a criminal complaint that properly named the target, but mistakenly incorporated plaintiff's personal information — including date of birth, social security number, and driver's license number. 861 F. App'x at 500. Confusingly, the targeted individual confirmed that plaintiff's information was her own at various points during the criminal proceedings at that time and eventually pled guilty to the charges despite the biographical errors in the complaint. *Id.* at 499-500. Two years later, the incorrect personal information on the complaint was included on a bench warrant for the target after she violated the terms of her probation. *Id.* at 500. The mistake was not detected by law enforcement. *Id.* at 499.

Additionally, there are sufficient allegations for us to infer — at this stage — that defendants had notice of issues related to mistakes with warrants. The amended complaint cites four local incidents where officers allegedly entered into homes either by inaccurately executing valid warrants or while executing inaccurate warrants. DI 17 at 3. While defense counsel noted that three of these cases are in active litigation and one has been voluntarily dismissed, defendants fail to explain how these incidents would not have at least put defendants on notice of potential issues. Further, as outlined in *Berg*, "it is a more than reasonable inference" to suppose that a system responsible for issuing so many warrants "would be the product of a decision maker's action or acquiescence." 219 F.3d at 276.

### III.    Conclusion

For the foregoing reasons, defendants' motion to dismiss the conspiracy and *Monell* claims is denied. Ms. Moses-Farrare has sufficiently pled facts that, taken as true, could plausibly establish a conspiracy to deprive her of her constitutional rights and support a lack of municipal policy for preventing the issuance of erroneous warrants.